CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
02/12/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT H.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:17-CV-50 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert H. ("Robert") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Robert alleges that the Administrative Law Judge ("ALJ") erred by giving little weight to the opinion of his treating physician, by improperly weighing his testimony at the administrative hearing, and by failing to give a proper hypothetical question to the vocational expert. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Robert's Motion for Summary Judgment (Dkt. No.13) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Robert failed to demonstrate that he was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

Act.[2]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Robert filed for SSI on December 18, 2013, claiming that his disability began on January 1, 2010.[3]  R. 177–85.  Robert's claim was denied at the initial and reconsideration levels of administrative review. R. 108–12, 120–26.  On April 8, 2016, ALJ Mary C. Peltzer held a hearing, during which Robert was represented by counsel, and which included testimony from Robert and vocational expert Sandra Rose-Brown. R. 41–64.  On May 16, 2016, the ALJ entered her decision analyzing Robert's claim under the familiar five-step process[4] and denying his claim for benefits.  R. 19–34.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Robert later amended his onset date to the date of filing, December 13, 2013. R. 45–46.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Robert suffered from the severe impairments of Dupuytren's contracture,[5] residuals of gunshot wound, HIV, and mood disorder. R. 21. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21–24. The ALJ concluded that Robert retained the RFC to perform a range of light work, except that he is limited to no climbing ladders, ropes or scaffolds; occasionally crawling; frequently handling and fingering with his right upper extremity; occasional exposure to extreme cold and workplace hazards such as dangerous machinery, but no exposure to unprotected heights.[6] R. 24–25. The ALJ also determined that Robert can perform unskilled work at an SVP 1 or 2 involving simple, routine tasks that generally involve things instead of people and has no contact with the general public. R. 25.

The ALJ found that Robert would be unable to perform his past relevant work as a painter, but that other jobs exist in the economy that he can perform, such as housekeeper, merchandise marker, and routing clerk. R. 32–33. Thus, the ALJ concluded that Robert was not disabled. R. 33. The Appeals Council denied Robert's request for review, and this appeal followed. R. 1–4.

## ANALYSIS

Robert alleges that the ALJ erred by giving the opinions of his treating psychiatrist James W. Gallagher, M.D., little weight; by failing to properly account for his moderate impairment

---

[5] Dupuytren's contracture is a hand deformity that develops over years, involving the formation of knots of tissue under the skin creating a thick cord that can pull one or more fingers into a bent position. See https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/symptoms-causes/syc-20371943

[6] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

with concentration, persistence or pace in the hypothetical question given to the vocational expert; and by failing to properly weigh his subjective testimony.

### A. Medical History[7]

Robert was 50 years old on his alleged onset date; completed the 10th grade and did not obtain his GED. R. 47, 49. Robert last worked as a painter, and last posted earnings in 1997. R. 50, 191–92, 205. Robert began receiving psychiatric treatment from Dr. Gallagher in April 2014. R. 410. Dr. Gallagher's notes are illegible; however, it appears that he diagnosed Robert with a mood disorder. R. 410–13, Pl. Br. Summ. J. p. 2, n.5. In June 2014, Robert visited Dr. Gallagher and noted sleeping a bit better, crying a lot, repeating himself, avoiding people, having a good appetite, low energy and motivation, poor memory, feeling worthless and helpless. R. 825. Upon examination, Dr. Gallagher noted normal thought content, intact fund of knowledge and attention span, normal ability to concentrate, normal speech, stable mood and affect. Dr. Gallagher noted that Robert displays or has experienced abnormal or psychotic thoughts. Id. Dr. Gallagher prescribed Tegretol for Robert's mood disorder. Id.

Robert continued to seek treatment from Dr. Gallagher in August, October, November, and December of 2014, and February, March and April of 2015. R. 827–41. In August, Robert reported doing well, less irritability, better mood, less isolated, "so so" energy and motivation, "not good" concentration and memory, feeling hopeless and worthless. R. 827. Dr. Gallagher noted that Robert's recent memory was abnormal, and continued Robert's medications. Id. In October, Robert reported not sleeping well, feeling more paranoid, having poor appetite, energy and motivation, poor concentration and memory. R. 829. Upon exam, Dr. Gallagher noted Robert's mood as depressed, sad, and apathetic; his thought content included auditory

---

[7] Robert does not contest the ALJ's decision relating to his physical impairments; thus, this opinion will only discuss Robert's mental impairments. See Pl. Br. Summ. J. p. 2.

4

hallucinations and delusions; and he had abnormal inattentive and recent memory. Id. Dr. Gallagher increased Robert's prescription for Latuda, and continued his other medications. R. 830. In November, Robert reported sleeping and eating better, "so so" energy and motivation, and "poor" concentration and memory. Upon exam, Robert's mood was stable, and his thought content included no hallucinations or delusions. R. 831. In December, Robert reported that his mood was good, his appetite was good, his energy and motivation were low, and his concentration and memory were "50/50." He did not feel helpless or hopeless, but did feel worthless. R. 833. Robert's mental exam was normal, aside from abnormal recent memory. Id. In February, March and April 2015, Robert reported poor appetite, energy, motivation, concentration and memory, and feelings of hopelessness and worthlessness. R. 835, 837, 839. His mood was depressed and apathetic, and his thought content included hallucinations. Id. In July 2015, Robert reported good appetite, poor energy and motivation, slow concentration and memory, feeling hopeless and worthless, and feeling like "he is being touched by unseen others." R. 879. Dr. Gallagher continued treating Robert with medications.

On September 3, 2014, state agency physician Linda Dougherty, Ph.D., reviewed Robert's records and determined that he had a mild limitation with activities of daily living, moderate difficulties with maintaining social functioning, and moderate difficulties with maintaining concentration, persistence or pace. R. 85. Dr. Dougherty determined that Robert was not significantly limited in his ability to carry out short and simple instructions or detailed instructions, to perform activities within a schedule, maintain regular attendance and be punctual. R. 88. Dr. Dougherty determined that Robert had moderate limitation with maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, and completing a normal workday and workweek without

5

interruptions from symptoms and performing at a consistent pace. Id. Dr. Dougherty concluded that Robert could perform simple, routine tasks, and work that does not require a great deal of social interaction. Id. On December 5, 2014, state agency psychiatrist Sandra Francis, Psy.D., reviewed Robert's records and agreed with Dr. Dougherty's conclusions. R. 105.

After Robert's April 2015 visit, Dr. Gallagher completed a mental impairment questionnaire, and noted that he sees Robert monthly and as needed for mood disorder and psychosis. R. 884. Dr. Gallagher noted Robert's symptoms, including depressed mood, persistent anxiety, feelings of guilt and worthlessness, suicidal ideation, difficulty thinking or concentrating, easy distractibility, poor memory, paranoia, decreased energy, hallucinations and insomnia. R. 885. Dr. Gallagher noted that Robert experiences paranoia, auditory and visual hallucinations. R. 886. Dr. Gallagher determined that Robert has moderate-to-marked limitations in the areas of understanding, remembering and carrying out one-to-two step instructions. R. 887. Otherwise, Dr. Gallagher found that Robert has marked limitations in all aspects of the categories of understanding and memory, concentration and persistence, social interactions and adaptation. Id. Dr. Gallagher determined that Robert was likely to be absent from work more than three times a month due to his impairments. R. 888.

On September 30, 2015, Dr. Gallagher wrote a letter "To Whom It May Concern," stating that Robert is "unable to work due to his medical conditions and medications he is currently taking." R. 883.

### B. Opinion of Treating Physician

Robert argues that the ALJ erred by failing to give greater weight to the opinion of Dr. Gallagher regarding his mental limitations. The ALJ reviewed Dr. Gallagher's September 30, 2015 letter that Robert is unable to work, and the Mental Impairment Questionnaire he

completed indicating that Robert has multiple marked mental limitations. R. 29. The ALJ gave both assessments little weight. With regard to Dr. Gallagher's statement that Robert is unable to work, the ALJ stated,

> This is an opinion on an issue that exceeds the expertise of the physician and is reserved to the Commissioner…In addition, this opinion is not supported by the record. It was reported that the claimant's ability to recall recent and remote events was intact, that his attention span and ability to concentrate were normal, and that his judgment in social situations was appropriate. He also reported that the claimant's recent and remote memory were within normal limits, that he was well-groomed, with normal speech, and an appropriate mood and affect. It was consistently reported that the claimant's viral load was undetectable, that his HIV was still asymptomatic, that he had no side effects from his regimen, and he was to remain on this current medication regimen. It was also reported that he was not experiencing any HIV related symptoms. He was observed to have a normal gait and station, and normal strength and tone with no atrophy. He denied anxiety, depression, abdominal pain, numbness, weakness, chest pain, palpitations, shortness of breath, and wheezing. An examination showed a soft, non-tender, and supple abdomen, with a normal attention span and ability to concentrate and no impairment to his recent or remote memory.

R. 29 (internal citations omitted).

With regard to Dr. Gallagher's mental impairment questionnaire, the ALJ stated,

> This opinion is given little weight. The claimant testified that he would watch old movies on TV for most of the day. Dr. Gallagher himself reported that the claimant's ability to recall recent and remote events was intact, that his attention span and ability to concentrate were normal, and that his judgment in social situations was appropriate. He also reported that the claimant's recent and remote memory were within normal limits, that he was well-groomed, with normal speech, and an appropriate mood and affect.

R. 29.

The ALJ also considered the opinions of state agency psychiatrists Drs. Doughtery and Francis that Robert could perform simple, routine tasks that do not require a great deal of social interaction, and gave their opinions great weight. The ALJ noted,

> The claimant reported that he avoided people.  In contrast, it was reported that the claimant's judgment was appropriate in social situations.  He reported that he did not socialize or like to be around many people, and that he had problems getting along with others.  He said he did not spend time with others, did not go out alone, and did not go shopping in stores.  He reported poor memory and low energy and motivation.  He also reported problems with concentration.  However, he was observed though to have a normal attention span and ability to concentrate and no impairment in his recent or remote memory.  In December of 2014, the claimant reported that his memory and concentration were 50/50.  He was reported to have a normal thought content, normal concentration and attention span, abnormal recent memory, and appropriate insight and judgment.  He said he had trouble with his memory, concentration, and completing tasks.

R. 30 (internal citations omitted).

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence.  See 20 CFR § 404.1527(c).  The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion.  20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 U.S. Dist. LEXIS 32627, at * 3, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).  Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5).  "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10

(E.D. Va. Dec. 29, 2010) citing Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, substantial evidence supports the ALJ's decision to give little weight to Dr. Gallagher's opinions. The ALJ reviewed Robert's medical history in detail, his testimony and the opinions in the record. R. 25–32. The ALJ summarized the opinions of Robert's treating psychiatrist and the state agency psychiatrists, and ultimately determined that the opinions of the state agency psychiatrists were consistent with the objective medical evidence while the opinions of Dr. Gallagher were not. The ALJ provided reasoning for this conclusion, based upon Robert's mental status examinations, his testimony and other medical evidence in the record, and the ALJ cited to treatment notes in the record to support her conclusion. R. 29–30.

Robert asserts that the ALJ relied upon a selective reading of the record to pull out normal findings while disregarding the abnormal findings supporting Dr. Gallagher's opinions. Pl. Br. Summ. J. p. 9. Robert asserts that the ALJ "cherry pick[ed]" the evidence to support his

9

position. Id. at 10. However, the ALJ reviewed the medical evidence in detail in the opinion. R. 25–27. While discussing Dr. Gallagher's opinion, the ALJ referenced the portions of the record that she believed contradicted Dr. Gallagher's opinions, which is consistent with the treating physician analysis required by the regulations.

Robert also asserts that the ALJ erred by referencing his "sporadic activities of daily living," such as watching TV, to discredit Dr. Gallagher's opinions. Id. at 11. While the ALJ did mention some of Robert's activities of daily living in her analysis, she relied upon more than those daily activities to discount Dr. Gallagher's opinions, including Dr. Gallagher's own treatment notes. Further, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

Robert further notes that the state agency psychiatrist opinions on which the ALJ relies were given prior to Dr. Gallagher's opinions in the record, and thus, those psychiatrists did not have the benefit of reviewing the entire record. Id. at 12. Robert argues, "the opinions from non-treating, non-examining sources who review a markedly undeveloped record cannot outweigh the well-supported opinions from a treating specialist." Id. However, "[a]n ALJ may credit the opinions of a nontreating and nonexamining source if that opinion provides 'sufficient indicia of supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistence between the opinion and the record as a whole; and specialization in the subject matter of the opinion.'" Testamark v. Beryhill, 736 Fed. Appx. 395, 398 (4th Cir. Aug. 31, 2018) (quoting Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018)). Here, the ALJ provided reasoning to

10

support her decision to give the state agency psychiatrist opinions more weight than the opinion of Dr. Gallagher.

The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. 20 C.F.R. §§ 404.1545, 404.1546. An ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Here, the ALJ found that Dr. Gallagher's opinions were inconsistent with his treatment notes, with Robert's activities of daily living, and with Robert's mental examinations. The ALJ provided her reasoning for giving Dr. Gallagher's opinions less weight, and established the required logical bridge from the evidence to her conclusion. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's determination that Robert is capable of a limited range of light work.

### C. Hypothetical Question to the Vocational Expert

Robert also asserts that the ALJ failed to present a proper hypothetical question to the vocational expert that described all of his mental limitations. Pl. Br. Summ. J. p. 17. Specifically, Robert alleges that the ALJ was required to include limitations regarding his moderate impairment with social functioning and concentration, persistence or pace in the hypothetical given to the vocational expert.

At the administrative hearing, the ALJ asked the vocational expert if jobs existed in the national economy for an individual who can perform "unskilled work and an SVP of 1 or 2 involving, simple, routine tasks that generally involve things instead of people, and no contact

11

with the general public." R. 61. The vocational expert testified that jobs did exist, such as housekeeper, merchandise marker, and routing clerk. Id.

Robert asserts that the restriction to unskilled, simple, routine tasks does not address his ability to concentrate over a period of time, persist at tasks, or perform work at a particular pace over the course of a workday or workweek. Pl. Br. Summ. J. p. 17. Robert relies upon Mascio v. Colvin, where the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to highlight the evidence of record that supports that conclusion.

Here, the ALJ reviewed the medical evidence set forth above, as well as Robert's testimony, and determined that he has mild restriction of activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration and persistence.

Notably, the ALJ found that Robert only had mild limitations with pace. R. 23. Specifically, at step 3, the ALJ noted:

> He said he had trouble with his memory, concentration, and completing tasks. He reported poor memory and low energy and motivation. He also reported problems with concentration. In contrast, he was observed though to have a normal attention span and ability to concentrate and no impairment to his recent or remote memory. (Exhibit B4F). In December of 2014, the claimant reported that his memory and concentration were 50/50. (Exhibit B22F). He was reported to have a normal thought content, normal concentration and attention span, abnormal recent memory, and appropriate insight and judgment. (Exhibit B23F).

R. 23–24.

In his step 4 analysis, the ALJ found that Robert's alleged problems getting along with others and his trouble with memory, concentration and completing tasks is not supported by the record. R. 27. The ALJ noted Dr. Gallagher's records reporting that Robert's ability to recall recent and remote events was intact, his attention span and ability to concentrate were normal, and his judgment in social situations was appropriate. R. 27. The ALJ also noted records reporting that Robert's recent and remote memory were within normal limits and he was well-groomed, with normal speech and an appropriate mood and affect. R. 27, 843–44.

The ALJ relied upon state agency psychiatrist findings that despite his moderate impairments in concentration, persistence or pace, Robert was capable of performing simple, routine tasks. The ALJ discussed those opinions in her decision and gave them great weight. R. 30.

Thus, this is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ specifically assessed Robert's concentration, persistence or pace separately, and found moderate impairments with concentration and persistence, but only a mild impairment with pace. The ALJ explained her

13

reasoning for those determinations in step 3 and 4 of her opinion, and supported her findings with Robert's medical records and the state agency opinions.  Thus, this court is not "left to guess about how the ALJ arrived at his conclusions."  Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

The ALJ accommodated Robert's limitations by providing an RFC of "unskilled work at an SVP 1 or 2 involving simple, routine tasks that generally involve things instead of people and no contact with the general public." R. 25.  Thus, the hypothetical question given to the vocational expert includes all of Robert's limitations as set forth in the RFC.

### D. Subjective Complaints of Limitations

Robert argues that the ALJ's assessment of his allegations regarding his limitations is not supported by substantial evidence.  Specifically, Robert asserts that the ALJ inappropriately relied upon a selective reading of the record to discount his allegations. Pl. Br. Summ. J. p. 16.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[8] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[9] First, the ALJ looks for objective medical evidence showing a condition that could reasonably

---

[8] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[9] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

14

produce the alleged symptoms, such as pain.[10] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed consideration of Robert's medical history, along with Robert's own allegations, and the ALJ adequately supported her finding that Robert's allegations were not entirely consistent with the record evidence. The ALJ wrote:

> [Robert's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Robert's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 27. The ALJ noted that Robert's alleged problems getting along with others and trouble with concentration, memory and completing tasks is not supported by the record. R. 27. The ALJ cited records reflecting that Robert's ability to recall recent and remote events was intact, his attention span and ability to concentrate was normal, and his judgment in social situations was appropriate. Id. Likewise, the ALJ described objective findings from Robert's medical records

---

[10] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

that contradicted his alleged difficulties with walking, lifting, carrying, reaching and standing. Id. The ALJ also reviewed the physician opinion evidence in the record, and weighed those opinions against Robert's testimony with regard to his limitations. R. 28–30.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported her analysis of Robert's subjective complaints with substantial evidence, and that Robert is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: February 12, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge